UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:

IDEAL MORTGAGE BANKERS, LTD, a/k/a				Chapter 7
LEND AMERICA, a/k/a CONSUMER FIRST
LENDING KEY,								Case No.: 10-79280-las

                                Debtor.
-------------------------------------------------------------------x
R. KENNETH BARNARD, ESQ.,
As Chapter 7 Trustee of IDEAL MORTGAGE
BANKERS, LTD a/k/a LEND AMERICA, a/k/a
CONSUMER FIRST LENDING KEY,

                                Plaintiff,

                                v.						Adv. Pro. No.: 12-08440-las

HELENE DECILLIS,

                                Defendant.
-------------------------------------------------------------------x

## MEMORANDUM OPINION GRANTING
## TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

      Plaintiff R. Kenneth Barnard, as the chapter 7 trustee (the "Trustee") of the estate of Ideal Mortgage Bankers, LTD, a/k/a Lend America, a/k/a Consumers First Lending Key (the "Debtor"), filed a complaint (the "Complaint") against Helene DeCillis (the "Defendant") alleging that the Defendant (i) breached her fiduciary duties to the Debtor, and (ii) aided and abetted a breach of fiduciary duty by the Debtor's chief business strategist, Michael Ashley ("Ashley"). In the Complaint, the Trustee seeks damages in excess of $52,000,000. Now before the Court is the Trustee's unopposed motion for summary judgment (the "Motion"). For the reasons set forth in this Memorandum Opinion, the Trustee's Motion is granted with respect to the issue of liability and the Court shall conduct a separate hearing on the issue of damages.

1

The Court issues the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P.").[1]

## JURISDICTION

The Court has jurisdiction of this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

## BACKGROUND AND PROCEDURAL HISTORY[2]

The Debtor was a mortgage banker/mortgage lender that participated in mortgage origination programs sponsored by the United States Department of Housing and Urban Development. (Compl. ¶ 6). Beginning in 2003, the Defendant was employed as the Debtor's chief operating officer. (Compl. ¶¶ 14, 27; Pl. 7056-1 Stm. at ¶ 7). During the period from 2006 through 2009, the Debtor paid the Defendant compensation of at least $1,881,509.36. (Compl. ¶ 29).

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

[2] The Court's account of the underlying facts are taken from the uncontested allegations in the complaint, the Trustee's Statement of Undisputed Material Facts ("Trustee's Local Rule 7056-1 Statement") submitted by the Trustee in connection with this Motion and the exhibits attached to the Declaration of Lon J. Seidman in Support of Trustee's Motion for Summary Judgment ("Seidman Declaration"). References to the Trustee's Local Rule 7056-1 Statement will be styled as "Pl. 7056-1 Stm. ___". References to the Seidman Declaration will be styled as "Seidman Decl. __".

The Defendant did not submit a responsive Rule 7056-1 statement as required by Local Bankruptcy Rule 7056-1 ("LBR 7056-1"), and the Court therefore deems the facts contained in the Trustee's Local Rule 7056-1 Statement admitted and uncontroverted. *See* LBR 7056-1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted by the opposing party unless controverted by the statement required to be served by the opposing party."). However, a local rule, such as LBR 7056-1, "does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001). Accordingly, the Court must determine whether the admitted facts are sufficient to entitle the moving party to summary judgment, even if the opponent does not specifically deny the asserted fact. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)*; Benavidez v. Plaza Mex. Inc.*, Nos. 09 Civ. 5076, 09 Civ. 9574, 2012 U.S. Dist. LEXIS 19206, at *9-10 (S.D.N.Y. Feb. 14, 2012) (A court must ensure the "averments in the movant's Rule 56.1 Statement are supported by evidence and show an absence of a genuine issue for trial.") (*citing Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 618 (S.D.N.Y. 2008). The Court recites only those facts relevant to the claims and defenses at issue.

On December 4, 2009, the New York Superintendent of Banks issued a cease and desist order (the "Cease and Desist Order")[3] directing the Debtor to cease to engage in the activities of a mortgage banker. (Compl. ¶ 64; Pl. 7056-1 Stm. at ¶ 11). On November 30, 2010, an involuntary chapter 7 petition was filed against the Debtor by (i) EAM Land Services, LLC, (ii) PSS Settlement Services, LLC, n/k/a First Choice Settlement, LLC, (iii) Evans National Leasing, Inc., and (iv) Michael and Kimberly McLean. (Seidman Decl. ¶ 3). The Debtor did not respond to the involuntary petition. An order for relief was entered by the Court on December 29, 2010. (Seidman Decl. ¶ 6).

On November 3, 2011, the United States Attorney for the Eastern District of New York filed an Information charging the Defendant with bank fraud under 18 U.S.C. §§ 1344, 2 and 3551, et seq. in the matter of *United States of America v. Helene DeCillis*, No. 11-cr-0682 (E.D.N.Y. 2011) ("DeCillis Criminal Action"). (*See* DeCillis Criminal Action, Dkt. No. 3).[4] A plea conference was held on the same date before Magistrate Judge Tomlinson (the "Plea Conference").[5] The purpose of the Plea Conference was to take the "[Defendant's] plea or the entry of [Defendant's] plea and to make specific findings as to whether the plea is knowingly and voluntarily made, and to make a recommendation to [District Court] Judge Spatt as to whether the plea of guilty should be accepted". (Tr., p.3, ll. 21-24). At the Plea Conference, the Defendant pled guilty to the charge of bank fraud in her role as the Debtor's chief operating officer. (Tr., p. 18, ll.14-15). After taking the Defendant's plea, Magistrate Judge Tomlinson recommended to Judge Spatt that the Defendant's guilty plea be accepted. The recommendation was accepted by Judge Spatt pursuant to an order dated November 3, 2011. (*See* DeCillis Criminal Action, Dkt. No. 33).

On December 17, 2012, the Trustee commenced this adversary proceeding against the Defendant seeking damages in excess of $52,000,000 incurred by the Debtor as a result of the Defendant's alleged

---

[3] Attached as Exhibit E to the Seidman Declaration is a copy of the Cease and Desist Order.

[4] The Court is permitted to take judicial notice of publicly-filed documents. *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) (noting that courts may take judicial notice of public filings); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts ... to establish the fact of such litigation and related filings." (internal citation omitted)).

[5] Attached as Exhibit D to the Seidman Declaration is a copy of the transcript of the Plea Conference. References to the transcript will be styled as "Tr. ___". The transcript references the Information to which Defendant pled guilty.

failure to properly discharge her corporate responsibilities as the Debtor's chief operating officer by (i) breaching her fiduciary duties and (ii) aiding and abetting the breach of fiduciary duty by Ashley. (ECF Doc. No. 1).[6] On January 15, 2013, the Defendant filed an answer to the Complaint (the "Answer") which did not assert any affirmative defenses. (ECF Doc. No. 5). On September 26, 2014, the Trustee filed this Motion (ECF Doc. No. 19) seeking summary judgment on his first claim for relief for breach of fiduciary duty. The Motion was accompanied by a memorandum of law (ECF Doc. No. 20) and as required under LBR 7056-1, a separate statement of material facts (ECF Doc. No. 19-10) as to which the Trustee contends there is no genuine issue to be tried. Also filed in support of the Motion were the following exhibits: (i) the Complaint, (ii) the Answer, (iii) a summary of transfers by the Debtor to third parties (the "Transfers Summary"),[7] (iv) a copy of the transcript of the Plea Conference, (v) the Cease and Desist Order and (iv) the Debtor's payroll records during the period 2006 through 2009. The Defendant did not oppose the Motion nor appear at the hearing on the Motion held before the Court.

## DISCUSSION

### I. Summary Judgment Standard

Under Fed. R. Civ. P. 56, made applicable to this proceeding by Fed. R. Bankr. P. 7056, summary judgment may not be granted unless the movant shows, based on admissible evidence in the record placed before the Court, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of demonstrating the absence of a genuine dispute as to any material fact. *Celotex*, 477 U.S. at 322-23. Thus, the moving party bears the initial burden of identifying

---

[6] All references to "ECF Doc. No. __" refer to documents on the docket of this Adversary Proceeding No. 12-08440, unless otherwise specified.

[7] The Transfers Summary is attached to the Seidman Declaration as Exhibit C and is referenced in the Seidman Declaration as "a true and correct copy of a summary of transactions evidencing the [t]ransfers." (Seidman Decl. ¶ 11).

those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine dispute of material fact. See, *Celotex*, 477 U.S. at 323. *See also Anderson*, 477 U.S. at 249. The evidence on each material element of its claim or defense must be sufficient to entitle the moving party to relief in its favor as a matter of law. *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

If the movant meets its initial burden, the nonmoving party must then produce "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. *See also* Fed. R. Civ. P. 56(c). To meet this burden, the nonmoving party must offer more than a "scintilla of evidence" that a genuine dispute of material fact exists, *Anderson*, 477 U.S. at 252, or that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rather, it must present "significant probative evidence" that a genuine issue of fact exists. *Anderson*, 477 U.S. at 249 (internal citations and quotation marks omitted).

On a motion for summary judgment, the court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010). A court should grant the motion if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita,* 475 U.S. at 587 (internal quotation marks omitted).

Even when a motion for summary judgment is unopposed, the Court cannot grant the motion "without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Vermont Teddy Bear Co*., 373 F.3d at 244 (*citing Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)). If the evidence submitted in support of the motion fails to satisfy the movant's burden, then summary judgment must be denied even if no opposing evidentiary matter is presented. *Id.*

## II.     Breach of Fiduciary Duty

The Trustee has standing to pursue an action on behalf of the Debtor's estate under New York law for breach of fiduciary duty against the Debtor's fiduciaries. *See Picard v. Madoff* (*In re Bernard L. Madoff Inv. Sec. LLC),* 458 B.R. 87, 122-123 (Bankr. S.D.N.Y. 2011). Under New York law, to establish a breach

of fiduciary duty, a plaintiff bears the burden of demonstrating "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Id.*, 458 B.R. at 127 (citation omitted).

In the first claim for relief under the Complaint, the Trustee alleges essentially two separate grounds upon which the Defendant breached her fiduciary duties to the Debtor for which the Trustee seeks summary judgment. The Trustee claims the Defendant, as the chief operating officer, had a supervisory role and a relationship of confidence such that she owed a duty of care and a duty of loyalty to the Debtor and its creditors (i) to carefully manage the Debtor's business operations, and (ii) to devise, implement and maintain proper controls and reported procedures with respect to the Debtor's financial affairs, among other things. (Compl. ¶ 67). The Trustee asserts that the Defendant neglected and failed to perform her duties in the management and disposition of the Debtor's assets committed to her care and thereby breached her fiduciary duties. (Compl. ¶ 69). First, the Defendant allowed the Debtor to use monies received under a warehouse line of credit with Gateway Bank, FSB to satisfy first mortgage loans the Debtor previously represented as being paid off and closed, rather than using the line of credit for its intended use, i.e., to fund original mortgage loans or to satisfy at closing current first mortgage loans that were being refinanced (the "Misappropriation of Mortgage Funds"). (Compl. ¶ 71). Second, the Defendant permitted the Debtor to transfer funds from its bank accounts to Ashley or to entities owned and/or controlled by Ashley or to his family members (collectively, the "Ashley Entities"), without receiving fair consideration or reasonably equivalent value in return (the "Ashley Transfers"). (Compl. ¶¶ 70, 72). In support of his claim of breach of fiduciary duty, the Trustee submits (i) the guilty plea and allocution of the Defendant to the charge of bank fraud (Pl. 7056-1 Stm. at ¶ 10; Seidman Decl. ¶ 13), and (ii) the Transfers Summary which allegedly details the Ashley Transfers in the aggregate amount of at least $52,681,799.03. (Pl. 7056-1 Stm. at ¶ 8; Seidman Decl. ¶ 10).

### A.      The Existence of a Fiduciary Relationship

The Defendant does not deny in her Answer that she was the Debtor's chief operating officer. [8] (ECF Doc. No. 5). As a corporate officer, the Defendant owed the Debtor a fiduciary duty. *See* N.Y. Bus. Corp. Law § 715(h) ("An officer shall perform his duties . . . in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances"). *See also In re Nofer*, 514 B.R. 346, 254 (Bankr. E.D.N.Y. 2014) (*citing In re Beeber*, 239 B.R. 13, 32 (Bankr. E.D.N.Y. 1999) ("The law is clear that a corporate officer . . . has a fiduciary duty to the corporation itself as well as the stockholders in general")). Therefore, the Court finds that there is no triable issue of fact as to whether the Defendant owed a fiduciary duty to the Debtor.

### B.      Misconduct by the Defendant

"A corporate officer's fiduciary duty includes discharging corporate responsibilities 'in good faith and with conscientious fairness, morality and honesty in purpose' and displaying 'good and prudent management of the corporation.'" *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 165 (2d Cir. 2003) (*quoting Alpert v. 28 Williams St. Corp.*, 63 N.Y.2d 557, 569, 473 N.E.2d 19 (1984)). *See also In re PHS Grp., Inc.*, Nos. 811-70413, 811-72285, 2015 WL 3528235, at *5 (Bankr. E.D.N.Y. June 4, 2015). Fiduciaries are held to a standard "stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is . . . the standard of behavior." *Meinhard v. Salmon*, 249 N.Y. 458, 464, 164 N.E. 545 (1928). A breach of fiduciary duty can also include the failure to do anything to correct or prevent misconduct by another and the failure to exercise reasonable diligence. *Gully*, 341 F.3d at 166-67 (affirming credit union board's determination that plaintiff breached her fiduciary duty as a manager when she failed to prevent the continued misuse of a corporate credit card by a board member and consultant, who was also her father, by failing to monitor her father's use of the credit card after she learned about his misconduct).

---

[8] Pl. 7056-1 Stm. at ¶ 7. Under Fed. R. Civ. P. 8(b)(6), made applicable to this proceeding by Bankruptcy Rule 7008, "[a]n allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6).

**1.     The Misappropriation of Mortgage Funds**

The Trustee asserts that the guilty plea and allocution of the Defendant to bank fraud leave no genuine issue of material fact for this Court to decide regarding the Defendant's misconduct and liability with respect to the Misappropriation of Mortgage Funds. The guilty plea and allocution of the Defendant are set forth in the transcript of the Plea Conference of the DeCillis Criminal Action. (Pl. 7056-1 Stm. at ¶ 10; Seidman Decl. ¶ 13, Ex. D). At the Plea Conference, the Assistant United States Attorney recited the charges in the Information[9] to which the Defendant pled guilty.[10] After making her plea, the Defendant, in her own words and in response to questions from the court, testified that:

> [b]etween 2003 and 2009, I was employed by Ideal Mortgage Bankers doing business as Lend America. At the time of the offense, I held the title of chief operating officer. Gateway Bank located in California was a warehouse lender for Mortgage Lenders including Lend America. In 2009, Gateway was the warehouse lender for thousands of mortgage loans in which Lend America borrowed from Gateway's line of credit. Under that agreement, Lend America was only permitted to use the warehouse loan money to fund original mortgage loans. In 2009 and the beginning of 2010, I together with others, misappropriated funds from the warehouse line of Gateway. Specifically, myself and others at Lend America did not pay off first mortgages as required at mortgage loan closings and instead used funds from Gateway's warehouse line of credit to pay Lend America operating expenses including payroll.[11]

The guilty plea and allocution are admissible in this adversary proceeding. *See Gowan v. Amaranth Advisors L.L.C. (In re Dreier LLP),* No. 08-15051, 2014 WL 47774, at *11 (Bankr. S.D.N.Y. Jan. 3, 2014); *Bayou Accredited Fund, LLC v. Redwood Growth Partners, LP* (*In re Bayou Grp., LLC*), 396 B.R. 810, 835 (Bankr. S.D.N.Y. 2008).

Based on the uncontested evidence set forth in the guilty plea and allocution, the Court finds that there is no triable issue of fact as to whether the Defendant breached her fiduciary duties to the Debtor with respect to the Misappropriation of Mortgage Funds.

---

[9] Tr. p.14, ll.3-11.

[10] Tr. p. 18, ll. 14-15.

[11] Tr. p. 20, ll. 2-16.

### 2. **The Ashley Transfers**

In addition, the Trustee asserts that the Defendant allowed the Debtor to transfer at least $52,681,799.03 of the Debtor's money to Ashley and the Ashley Entities (Seidman Decl. ¶ 10), and that "[t]he Debtor's books and records do not reflect that any consideration was provided to the Debtor in exchange for the Transfers." (Pl. 7056-1 Stm. at ¶¶ 8, 9). In support of his argument, the Trustee submitted (i) the Transfers Summary and (ii) the Seidman Declaration wherein Mr. Seidman states that "[t]he Trustee's forensic accountants have reviewed the Debtor's books and records, and those records do not reflect that any consideration was provided to the Debtor in exchange for the [t]ransfers."[12]

Because the Court finds in favor of the Trustee for breach of fiduciary duty based on the Defendant's guilty plea and allocution, the Court need not consider the Trustee's claim for breach of fiduciary duty based on the alleged Ashley Transfers.[13]

### C. **Damages**

For the third element of a cause of action for breach of fiduciary duty, the Trustee must show "damages directly caused by the defendant's misconduct." *In re Bernard L. Madoff Inv. Sec. LLC*, 458 B.R. at 127. The Defendant's guilty plea establishes the fact that the Defendant used her position as the Debtor's chief operating officer to misappropriate funds in violation of the law and against the interests of the Debtor. The Debtor suffered damages as a result of the Defendant's misconduct as evidenced by the bank fraud itself and the cessation of the Debtor's business. While the Trustee has asserted over $52,000,000 in damages, the Trustee does not seek to prove the amount of damages through this Motion. Rather, the

---

[12] Seidman Decl. ¶ 12.

[13] As such, the Court need not determine (i) whether Mr. Seidman necessarily possesses the requisite knowledge to attest to the matters contained in his declaration regarding the alleged transfers and (ii) whether that portion of his declaration meets the three requirements for a supporting declaration under Fed. R. of Civ. P. 56(c)(4). Fed. R .Civ. P. 56(c)(4) provides that the declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). *See also Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008); *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56 requires a motion for summary judgment to be supported with affidavits based on personal knowledge"). Furthermore, the Court need not determine whether the statements in the Trustee's Rule 7056-1 Statement regarding the alleged transfers and lack of consideration in return comply with LBR 7056-1 and Rule 56(c). *See Holtz*, 258 F.3d at 73-74 (where there are no citations to admissible evidence, or the cited materials do not support the purported undisputed facts in a party's Rule 56.1 statement, those assertions may be disregarded).

Trustee asserts only the fact of damages as a necessary element to satisfy his burden of proof on the cause of action for breach of fiduciary duty.

Based on the Defendant's statements at the Plea Conference and the uncontroverted evidence as to the guilty plea and allocution of the Defendant submitted in connection with this Motion, the Court concludes that the Trustee has met his burden of demonstrating that the Defendant breached her fiduciary duties as an officer of the Debtor and that summary judgment on the first claim for relief is appropriate.

## **CONCLUSION**

For the reasons set forth above, the Trustee's Motion is granted with respect to liability on the first claim for relief and a hearing on the amount of damages shall be scheduled by the Court.

A separate order shall be entered by the Court.



**Dated: September 25, 2015**
**Central Islip, New York**

**Louis A. Scarcella**
**United States Bankruptcy Judge**